UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

KEVIN B. ELLIS,                                                                  PLAINTIFF


v.                                                           CIVIL ACTION NO. 3:06-CV-235-S


YUM! BRANDS, INC.                                                            DEFENDANTS

<u>**MEMORANDUM OPINION**</u>

This matter is before the court upon the motion of the defendant YUM! Brands, Inc. ("Yum"), for summary judgment (DN 16). In this action, the plaintiff Kevin B. Ellis ("Ellis"), a former Yum aviation mechanic, claims he was constructively discharged from his employment in retaliation for asserting his right to overtime pay in accordance with the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") For the reasons set forth herein, the court will deny Yum's motion for summary judgment.

**BACKGROUND**

Ellis was employed by Yum as an aviation mechanic from September 3, 2002 until July 30, 2004. As an aviation mechanic, Ellis was responsible for performing maintenance on Yum aircraft. Throughout his employment with Yum, Ellis was classified as an exempt employee and was paid a salary.

Ellis began his employment understanding that he would be required to work approximately forty hours per week. However, within a few weeks of starting work, Ellis and the other members of Yum's aviation department were regularly working more than forty hours per week. Ellis complained to Gary Brown, Yum's Maintenance Manager and Ellis's supervisor, about the number of overtime hours he was working and inquired as to his entitlement to overtime pay.[1] Brown took Ellis's concerns to Steve

---

[1] Yum contends that while Ellis did complain about the number of overtime hours he was working, he did not mention the issue of overtime pay until July 22, 2004. Ellis, however, contends that he raised the issue with Brown in 2002.

Nielsen, Yum's Director of Aviation, who informed Ellis that he was not entitled to overtime pay because he was classified as an "Aviation Program Manager."

Throughout the remainder of 2002, and throughout 2003, Ellis and the other members of Yum's aviation department continued working over forty hours per week. Ellis continued to complain on a regular basis to Brown and other members of Yum's aviation department, about the number of hours that he and the others were working.[2] In April 2004, Nathan Winkle replaced Brown as Yum's Aviation Maintenance Manager. Soon thereafter, Ellis discussed the number of overtime hours he was working with Winkle. In addition, Ellis also complained to Barbara Stephens, Yum's Human Resource Manger, about the overtime hours. Stephens responded to Ellis's complaints by reporting to Nielsen that Ellis was "a very negative person."

Ellis continued making frequent complaints to Winkle and his co-workers. By mid-year 2004, almost everyone in the aviation department was unhappy about the number of hours they were working and Winkle began collecting data to justify adding a position in the aviation department. Around this time, Ellis's work began to suffer. Ellis's Individual Development Plan (IDP) was overdue,[3] and he had not updated his aircraft period report[4] and maintenance logbook.[5] Winkle testified that he informed Ellis that he had not started his IDP because, "I was irritated... [about] the amount of overtime I was working." Winkle also testified that he did not have time to update the period reports or maintenance logbook.

---

[2] Ellis complained anywhere from once a day to once a week.

[3] At the beginning of every calendar year, all Yum employees are required to identify their goals for the year. At mid-year all employees are required to meet with their supervisor to discuss their progress to date and what can be done to aid them in achieving their goals. In connection with this meeting Yum employees are required to develop an IDP.

[4] A period report is a report created to project the maintenance costs for aircraft over the next five years. Each year consists of thirteen periods. These period reports are to be completed within three days of the period end.

[5] The Federal Aviation Administration requires that maintenance logs be completed and permanently stored with each aircraft. YUM requires these maintenance logs be transferred into Yum maintenance logbooks.

On July 20, 2004, Ellis met with a Department of Labor ("DOL") investigator who informed Ellis that his Aviation Program Manager position should have been classified as non-exempt and that he should have been earning overtime pay. Ellis declined to file a formal complaint with the Department of Labor, deciding that he wanted to first discuss the matter with Winkle. On July 22, 2004, Ellis told Winkle about his meeting with the Department of Labor. On either July 26 or 27, 2004, Winkle advised Ellis that Nielsen had instructed him to calculate how much additional pay that airline mechanics would be entitled to if they were paid overtime.[6]

On July 27, 2004, Nielsen instructed Jim Szeszulski, Yum's Aviation Training Manager, to cancel an out-of-town three week training session that Ellis was scheduled to attend. On July 29, 2004, Ellis was called to a meeting with Nielsen and Winkle. Nielsen informed Ellis that he had a bad attitude, to which Ellis responded, "I sure do. I've got a bad attitude because of the overtime issues... what are we going to do about them?" According to Ellis, Nielsen responded by saying that they were doing nothing about overtime issues and that Ellis had several options: "[1] change [his] attitude and live it, [2] quit, [3] be terminated, or [4] take [a] severance package." Upon the conclusion of the meeting, Ellis learned from Szeszulski that his training session had been cancelled. On July 30, 2004, Ellis informed Winkle that he was quitting his employment with Yum.

On August 6, 2004, Ellis filed an FLSA complaint with the DOL. On August 23, 2004, Yum reclassified its aviation department Program Managers as non-exempt and began to prospectively pay overtime to those employees.[7] The DOL began investigating Ellis's complaint in April 2005, and

---

[6] According to Yum, beginning in April 2004, it was confidentially reviewing many Yum positions due to changes to the FLSA regulations regarding exempt and non-exempt positions. Yum was anticipating the possibility of paying Program Managers overtime and, as a result, Nielsen instructed Winkler to calculate the additional pay to which aviation mechanics would be entitled.

[7] Yum contends that this decision was the result of the completed analysis of its positions under the revised FLSA regulations and that it did not learn of Ellis's DOL complaint until later October 2004.

determined that Ellis and seven other Yum employees had been employed in positions which were incorrectly classified as exempt. Because Ellis and the other incorrectly classified employees had not received overtime pay for hours worked in excess of forty hours per week, Yum had violated the FLSA. As a result of Yum's FLSA violations, Yum agreed to pay Ellis and the other employees overtime back wages that they had been wrongfully denied. Ellis received a check from Yum for those back wages in October 2005, which after applicable deductions, totaled $3,519.78.

On May 17, 2006, Ellis filed this action against Yum claiming that he was constructively discharged from his employment in retaliation for asserting his FLSA right to overtime pay. Yum has moved for summary judgment as to this claim.

## DISCUSSION

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. V. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

The court notes at the outset that Ellis has asserted only one claim against Yum in his complaint, that Yum retaliated against him in violation of the FLSA for asserting his FLSA right to receive overtime pay.

The anti-retaliation provision of the FLSA provides that it is unlawful for an employer to "discharge or in any other manner discriminate against [an] employee because such employee has filed [a] complaint or instituted... any proceeding under [the FLSA]."  29 U.S.C. § 215(a)(3).  The Sixth Circuit has held that the burden shifting analysis employed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies to a FLSA claim of retaliation.  *Adair v. Charter County of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006).  To establish a prima facie case of retaliation, an employee must prove that: (1) he engaged in a protected activity under the FLSA; (2) the exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to him; and (4) there was a causal connection between the protected activity and the adverse employment action.  *Id.*  If the plaintiff establishes a prima facie case, the burden  shifts to the employer to set forth a legitimate, non-discriminatory reason for the adverse employment action.  *Id.*  If the employer carries this burden, the plaintiff must then prove by a preponderance of the evidence that the that the employer's proffered reasons were merely a pretext for unlawful discrimination.  *Id.*

In this case, Ellis has established a prima facie case of retaliation.  An informal complaint constitutes protected activity under the FLSA.  *See Moore v. Freeman*, 355 F.3d 558, 562 (6th Cir. 2004) ("the anti-retaliation provisions of the FLSA can be triggered by informal complaints"); *EEOC v. Romeo Community Schools*, 976 F.2d 985, 989-90 (6th Cir. 1992) ("[i]t is the assertion of statutory rights which is the triggering factor, not the filing of a formal complaint").  Although the majority of Ellis's frequent complaints involved the number of overtime hours he was working rather than Yum's failure to pay him overtime pay for those hours, Ellis clearly asserted his FLSA right to overtime pay to his supervisors

- 5 -

during his employment.  Accordingly, Ellis has established that he engaged in a protected activity and that Yum was aware of Ellis's exercise of this right.

Termination of employment constitutes an adverse employment action. *Adair*, 452 F.3d at 490 (citing *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 886 (6th Cir. 1996)).  While Ellis does not claim that he was fired by Yum after he asserted his FLSA right to overtime pay, he does assert that he was terminated from his employment by a constructive discharge.  To prove that he was constructively discharged Ellis must prove that: (1) Yum deliberately created employment conditions that would have been objectively intolerable to a reasonable person; and (2) either Yum intended to cause Ellis to quit or that Ellis's quitting was a reasonably foreseeable consequence of Yum's actions. *See Moore v. KUKA Welding Systems & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999).  With respect to the "objectively intolerable" standard, Ellis must demonstrate that his working conditions were "so difficult or unpleasant that a reasonable person in [his] shoes would have felt compelled to resign." *Keller v. Allstate Ins. Co.*, 146 Fed.Appx. 764, 765 (6th Cir. 2005) (quoting *Yates v. Avco Corp.*, 819 F.2d 630, 636-37 (6th Cir. 1987)).  In determining whether this standard has been met, courts consider whether an employee experienced:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir.2001).

In this case, Ellis has provided sufficient evidence to establish that his working conditions at Yum would have been objectively intolerable to a reasonable person.  The court does not find that the overtime hours Ellis worked and the lack of overtime pay for those hours to be objectively intolerable.  Such conditions were simply the nature of Ellis's employment.  All employees in the aviation department

- 6 -

experienced these conditions.  Ellis, however, was essentially told to accept the working conditions as they were without complaining, resign, or be terminated.  As noted, the assertion of one's FLSA rights is a protected activity under the FLSA.  *See Moore*, 355 F.3d at 562; *Romeo Community Schools*, 976 F.2d at 989-90.  Effectively prohibiting an employee from asserting his right to FLSA overtime pay by threatening to terminate him if he did in fact assert that right would be objectively intolerable to a reasonable person.

To be clear, the record does not indicate that Yum ever investigated Ellis's overtime complaints in an effort to determine their validity or ever informed Ellis that his complaints would be investigated.  Rather, Ellis was simply given an ultimatum and told that if he continued to complain about the overtime issues in the aviation department he would be terminated.  While such an ultimatum is not one of the *Logan* factors listed above, the court finds it sufficient to demonstrate that Ellis's working conditions were so difficult that a reasonable person in Ellis's position would have felt compelled to resign.  *See Logan*, 259 F.3d at 570 (noting that the list of factors is "non-exclusive").

In addition, the court finds that Ellis has presented evidence sufficient to establish that Yum intended to cause Ellis to quit by giving him the ultimatum at the July 29, 2004 meeting or that Ellis's quitting was a reasonably foreseeable consequence of being given the ultimatum.  Aside from the fact that quitting was one of the four options presented to Ellis, Ellis's scheduled training was cancelled two days prior to the July 29, 2004 meeting.  Yum has provided no evidence as to its reason for cancelling Ellis's training and such cancellation is evidence that Ellis's quitting was a reasonably foreseeable consequence of the ultimatum.  Accordingly, the court finds that Ellis has provided sufficient evidence to establish that he was constructively discharged, and thus, that he suffered an adverse employment action.

In order to prove a causal connection between his complaints about his lack of overtime pay and the ultimatum which led to his constructive discharge, Ellis must produce evidence from which an inference can be drawn that the ultimatum would not have been given had he not complained about his lack of overtime pay. *Adair*, 452 F.3d at 490. Yum's ultimatum came approximately one week after Ellis had last complained to Winkle about his lack of overtime pay and informed Winkle that he had met with a DOL investigator. Moreover, Ellis was given the ultimatum in response to stating that his negative attitude was the result of the overtime issues in the aviation department. Such evidence is sufficient to establish a causal connection.

Yum contends that the July 29, 2004 meeting was the result of Ellis's overdue IDP and period reports. Assuming this legitimate nondiscriminatory reason was the reason for initially calling Ellis to the meeting, such reason cannot be said to have been the basis for presenting Ellis with the option of either working overtime without further complaining or being terminated. To establish that Yum's legitimate non-discriminatory reason was pretext, Ellis must show either "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge. " *Manzer v. Diamond Shamrock Chemicals Co.* 29 F.3d 1078 (6th Cir. 1994). As previously noted, Ellis was given the ultimatum in response to stating that his negative attitude was the result of having to work overtime hours without overtime pay. Thus, to the extent that Yum contends the ultimatum was given in response to Ellis's overdue IDP and period reports, Ellis has sufficiently established that such a reason was pretext. Accordingly, Yum's motion for summary judgment will be denied.

A separate order will be entered herein this date in accordance with this opinion.